UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL and CARI WALL,<br><br>                 Plaintiffs,<br><br>    v.<br><br>COUNTRY MUTUAL INSURANCE COMPANY,<br><br>                 Defendant. | CASE NO. C17-446 MJP<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Plaintiffs' Motion for Summary Judgment (Dkt. No. 18), Defendant Country Mutual's Response to Plaintiffs' Motion for Summary Judgment (Dkt. No. 29), and Plaintiffs' Reply in Support of Motion for Summary Judgment (Dkt. No. 31);

2. Defendant Country Mutual's Motion for Summary Judgment (Dkt. No. 25), Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 35), and Defendant Country Mutual's Reply in Support of Motion for Summary Judgment (Dkt. No. 38);

all attached declarations and exhibits; and relevant portions of the record, rules as follows:

IT IS ORDERED that Plaintiffs' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED. Plaintiffs' claim for equitable estoppel will be DISMISSED.

**Background**

In 2011, Plaintiffs purchased a "jewelry endorsement" addendum to their coverage with Defendant; among the items covered was Mrs. Walls' wedding ring (appraised at approximately $41,000). (Dkt. No. 19, Dan Wall Declaration at ¶ 3.) The policy contained a provision which required them to bring any claims under the policy within one year of the date of "occurrence" of the loss. (Dkt. No. 27-4, Defendant Ex. 8 at 34-36.)

In July 2016, Mrs. Wall took the ring to Ben Bridge Jewelers in preparation for replacing the center stone with a larger one. (Dkt. No. 20, Cari Wall Declaration at ¶ 2.) A salesperson at Ben Bridge informed Mrs. Wall that the diamond was a fake (moissanite). Believing that their original diamond had been replaced sometime after purchase[1], Plaintiffs reported a theft to Defendant within TWO days of their discovery. (Dkt. No. 21-2.)

Defendant assigned an adjuster (Volak) to the claim within 24 hours. Defendant's Claim Activity Log indicates that Volak spoke with Mrs. Wall, who informed him that, outside of leaving the ring for an afternoon with Anthony's Jewelry in January 2009 (to replace the center stone) and having it re-tipped "with in the last 5 years" (again, leaving it for an afternoon), the ring had not been out of her possession. (Id. at 26.) Volak determined that, as there had not been

---

[1] A 2009 appraisal – which Plaintiffs provided to Defendant when they purchased the jewelry endorsement – confirmed the genuineness of the original stone.

a covered loss reported within 12 months from when the loss might have occurred, the claim would be denied. (Dkt. No. 26, Declaration of Thielbar at ¶ 6.)

Defendant says it "decided to continue to investigate the claim" (Id. at ¶ 8); Plaintiffs say Defendant investigated further because they threatened to cancel all their Country Mutual policies (the threat is reflected in Claim Activity Log; Dkt. No. 21-2 at 23). The claim was assigned to an investigator in Special Investigations Unit (Thielbar).[2] Thielbar interviewed Mrs. Wall, who indicated at that point that the last time the ring was out of her possession was sometime between November 2015 and February 2016 when it was taken to Anthony's Jewelry in Covington and cleaned; it was out of her possession approximately 15 minutes. (Dkt. No. 21-2 at 16.) He interviewed the owner of Anthony's Jewelry, who said that a ring could be removed and reset in approximately 5-10 minutes, but that he was the only one in the store with that level of skill (and he denied doing anything improper). He also said that such a process would leave pry marks that would need to be sanded or polished off. (Id. at 13-14.)[3] The owner also said that the store kept no records of cleanings. (Thielbar Depo at 46:23 - 47:15.)

Defendant concluded that Plaintiffs had still not established that the loss had occurred within the 12 months prior to their filing of the claim and on August 30, 2016 sent Plaintiffs a "Notice of Denial of Coverage." (Dkt. No. 21-5, Ex. F.) The reason stated for the denial was the absence of any proof that the ring had been worked on (i.e., out of Mrs. Walls' possession) any time during the 12 months preceding the filing of the claim. (Id.)

The Walls hired an attorney who contacted Defendant to complain about the denial, accusing Defendant's investigators (among other things) of "not conduct[ing] any investigation

---

[2] Plaintiffs cite to an email Thielbar wrote upon being notified of the assignment (but prior to further investigation) which stated "I agree the denial should stand…" (Dkt. No. 21-1, Thielbar Depo at 49:19.)

[3] There is no estimate reflected in that record of how long the sanding and/or polishing would take.

other than speaking with the Walls." (Dkt. No. 21-6, Ex. G; "December 6 letter".) Defendant's response detailed an investigation which had included interviews with the Walls, Anthony's Jewelry, Ben Bridge Jewelers, the appraiser at Exquisite Jewelry Appraisal Service and the King County Sheriff's Department. (Dkt. No. 26-3, Ex. 3; "December 9 letter.") The letter also indicated that Mrs. Wall had told the investigator that the cleaning had taken approximately 15 minutes, and "[a]ccording to the jewelers we spoke to this is not enough time to exchange the stone and repair the pry marks on the tips that would have been done during this process." (Id. at 2.)[4]

Plaintiffs filed suit in King County Superior Court on February 17, 2017, alleging violations of the Insurance Fair Conduct Act ("IFCA") and the Consumer Protection Act ("CPA"), bad faith, breach of contract and equitable estoppel. The matter was then removed to this district. (Dkt. Nos. 1-4.) When deposed, both Plaintiffs indicated that they had not suffered any damages other than the loss of the ring. (Dkt. No. 27-1, Depo of Cari Wall at 29:6-24; Dkt. No. 27-2, Depo of Dan Wall at 49:12-51:5.)

However, during the course of pretrial discovery, Defendant employed an expert (Irwin) from the Northwest Gemological Laboratory, who inspected the ring on December 7, 2017 and determined that it was a genuine diamond. (Dkt. No. 28, Declaration of Irwin at ¶¶ 8-11; Ex. 7.) At this point, it is undisputed that the diamond in Mrs. Walls' wedding ring is the original diamond; i.e., there was no theft. Plaintiffs had also paid, in preparation for litigation, a jewelry expert to assess whether it was possible to swap out the diamond and cover up the pry marks in the 15 minutes a cleaning would have taken (answer: Yes; Dkt. Nos. 21-8 and 21-9).

---

[4] Plaintiffs' motion includes a declaration from Anthony Ethier (Anthony's Jewelry) indicating that he told Thielbar that the removal and resetting would take 5 to 10 minutes. He also states in the declaration that the 5-10 minute estimate <u>includes</u> the time to polish/sand off the pry marks. (Dkt. No. 22, Declaration of Ethier at ¶¶ 9-10.) Ethier – while he indicates that this was what he <u>meant</u> -- does not indicate whether he told Thielbar this.

**Discussion/Analysis**

*Standard of review*

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. Cnty of L.A., 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." Galen, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." Scott v. Harris, 550 U.S. 372, 378 (2007).

Defendant has moved for summary judgment on all claims; Plaintiffs have moved for partial summary judgment on the IFCA, CPA and bad faith claims.

*Plaintiff's Motion for Summary Judgment*

The Insurance Fair Conduct Act (RCW 48.30.015) provides:

> (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action… to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs…

Certain violations of the Washington Administrative Code ("WACs") governing insurance claims investigation and settlement, while they do not constitute IFCA violations *per se*, can trigger the punitive damages award sections of the statute. WAC 284-30-330 lists a number of practices which it defines as "unfair methods of competition and unfair or deceptive

acts or practices of the insurer in the business of insurance," and those can be introduced as <u>evidence</u> of unreasonableness as well. Plaintiffs point to three subsections in particular:

   (1) Misrepresenting pertinent facts or insurance policy provisions

   (4) Refusing to pay claims without conducting a reasonable investigation.

   (13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

It is clear from Plaintiffs' briefing that they consider much of what Defendant and its agents did during the course of investigating their claim to be "unreasonable," but what they specifically identify in their legal argument is Defendant's

> [r]efusing to pay and denying the claims before conducting a reasonable investigation, then misrepresent[ing] the fact that "According to jewelers we spoke to [15 minutes] is not enough time to exchange the tone and repair the pry marks on the tips."

(Dkt. No. 18, Pltfs Mtn at 17 (quoting the December 9 Letter; Dkt. No. 21-7, Ex. H)).

For purposes of analyzing Plaintiffs' motion, the Court must view the facts in the light most favorable to Defendant insurance company. Viewed in that light, it is not possible to state, as a matter of law, that the investigation Defendant conducted prior to denying Plaintiffs' claim was "unreasonable." In addition to interviewing the Plaintiffs themselves, Defendant's investigator's Claim Activity Log reveals that he talked to the owner of Anthony's Jewelry, the sales associate at Ben Bridge, and the gemologist at Exquisite Jewelry (who did the 2009 appraisal for the insurance endorsement), as well as reviewing the King County Sheriff's report of the loss. (Dkt. No. 21-2, Claim Activity Log at 7-19.)

Plaintiffs' other alleged proof of unreasonableness is the "misrepresentation" by Defendant's agent that the jewelers he spoke to informed him that the time it takes to clean a

diamond ring was not sufficient time to switch out the stone and cover up the pry marks that would be left. Plaintiffs claim that what the agent had in fact been told was that the switching out and sanding off/polishing could all have been done within the 10-15 minutes which the standard cleaning takes. Their proof of this is a declaration from the owner of Anthony's Jewelry to that effect, and a declaration that that is what he told Thielbar. (Decl. of Ethier at ¶¶ 9-10.)

There are a number of problems with this that preclude summary judgment. First, Ethier says "I informed Mr. Thielbar that the total time a professional jeweler/goldsmith would require to *remove and reset* a stone such as the one at issue would be five to ten minutes." (Id. at ¶9; emphasis supplied.) And, then,

> [m]y estimate of five to ten minutes to remove and reset a stone such as the stone at issue includes the time it would require to polish or sand off any pry marks that would occur from the removal and resetting process.

(Id. at ¶ 10.) But the declaration does not say "I told Thielbar that my 5-10 minute estimate included sanding off or polishing." In fact, what he says he told Thielbar is that "removing and resetting" took five to ten minutes. It is equally likely that this is simply an instance of poor communication on the jeweler's part, rather than misrepresentation on the investigator's part.

Plaintiffs' evidence of scienter is further undercut by Thielbar's notes in the Claim Activity Log. His record of the interview with Ethier reflects that he was told "a professional jeweler/goldsmith could remove and reset a 2ct diamond w/in 5-10 minutes," and that

> when stones are set, they are not glued in and are simply held in place by the prongs clamping down around the stone. Anthony said that if/when a stone is removed/reset there would be pry marks on the prongs unless/until these marks could be sanded/polished off.

(Claim Activity Log at 13-14.) There is no indication in the notes that Thielbar was told that the 5-10 minute estimate included the time required to polish/sand off the pry marks. Furthermore, Thielbar's notes reflect the exact same "remove and reset" language that Ethier used in his own declaration, language which does not intuitively suggest that what was actually meant was "remove, reset, *and sand/polish off pry marks*." It is not possible, looking at this evidence in the light most favorable to the non-movant, that the Court can rule that there are no disputes of material fact (concerning what Theilbar was told or knew)[5] or that Plaintiffs are entitled to a finding of "bad faith" conduct or "unreasonable denial" as a matter of law.

The Court will DENY Plaintiffs' motion for summary judgment.

*Defendant's Motion for Summary Judgment*

Turning to Defendant's motion: much of Defendant's legal position on summary judgment is grounded in the theory that, because it ultimately turned out that there had been no theft and therefore no covered loss, their denial of coverage was not unreasonable and there can be no actionable claim for a violation of IFCA or the CPA, nor a bad faith violation of their contract. Tellingly, they cite no legal support for this assertion.

The legal reality is exactly the opposite. There is an abundance of case law that an insurance company can be held liable for bad faith and unreasonable conduct in the investigation and denial of a claim even where it ultimately turns out that there was no coverage. "[W]hether a coverage decision is correct… is not dispositive of [a] bad faith claim." Bryant v. Country Life Ins. Co., 414 F.Supp.2d 981, 1000 (W.D. Wash. 2006).

---

[5] Plaintiffs back off their "misrepresentation" argument in their reply brief, arguing that they are not required to prove intentional misrepresentation; that their evidence establishes that Thielbar "either misconstrued or ignored information favorable to the Walls that was in his possession at the time of denial" (Dkt. No. 31, Plaintiffs Reply at 9) and that is sufficient to prove "unreasonableness." Their evidence does not irrefutably establish misconstruing or ignoring any more than it establishes misrepresentation.

1   The issue is "whether Insurer's denial of coverage was unreasonable when it occurred,
2   not whether later developments could have vindicated the Insurer's decision." Fireman's Fund
3   Ins. Co.'s v. Alaskan Pride P'ship, 106 F.3d 1465, 1470 (9th Cir. 1997). Washington's Supreme
4   Court has held that "an insured may maintain an action against its insurer for bad faith
5   investigation of the insured's claim… regardless of whether the insurer was ultimately correct in
6   determining that coverage did not exist." Coventry v. American States Ins. Co., 136 Wn.2d 269,
7   279 (1998).

It is clear, throughout the course of this claim process and investigation, that all parties believed that the original stone had been stolen. The issue in everyone's mind was not whether Plaintiffs had suffered a loss, but when and where that loss had occurred and whether the loss was covered by the policy with Defendant. Defendant is absolutely bound by its obligation to conduct a reasonable investigation regardless of the post-investigation discovery that no loss had occurred. Defendant seeks an *ex post facto* ruling that their investigation and denial were *per se* reasonable because it later turned out that no theft had occurred in the first place -- the law does not entitle them to that.

Furthermore, the entire case rests on the issue of the "reasonableness" of Defendant's investigation, which in turn rests on allegations that Thielbar the investigator either misrepresented (or, as Plaintiffs later argue, misconstrued or ignored) evidence favorable to Plaintiffs. This is very much a "what did Defendant's investigators know and when did they know it" case and (as detailed above) there are disputed issues of material fact in that regard (with Ethier claiming he told Thielbar one thing, and Thielbar claiming that he does not remember it that way). In the face of these disputed and material factual issues, summary

judgment is not possible on most of these causes of action (with the exception of the equitable estoppel claim; *see infra*).

On its face, Defendant has a stronger argument in its position that it is entitled to summary judgment because Plaintiffs have not established any harm as a result of Defendant's conduct. However, Washington case law is against them: even the *de minimis* amount expended by Plaintiffs for their jewelry expert qualifies as "harm" according to the Washington Supreme Court.

Analysis of harm for every cause of action must begin from the undisputed fact that the only loss claimed to have been suffered by Plaintiffs is (1) the money they paid a jewelry expert – in preparation for litigation -- for his opinion regarding the amount of time it would take to swap out the diamond ($420; Dkt. Nos. 21-8 and 21-9), and (2) their attorneys' fees.

A seminal "bad faith harm" case is Coventry v. American States Ins. Co., 136 Wn.2d 269 (1998), the case that held that an insurance company whose refusal of a claim was ultimately determined to be justified could still be held liable for bad faith conduct in the investigation of the claim. In its opinion, the Washington Supreme Court, while "declin[ing] to hold in the first-party context a rebuttable presumption of harm exists once an insured acts in bad faith," held that "[t]o the extent [an insured] can establish it incurred expenses as a direct result of [an insurer's] breach of contract and bad faith actions, it was harmed." Id. at 281-83. In Coventry, those expenses included hiring experts to review the circumstances of the case which led to the alleged damage, as well as an insurance expert to render an opinion on whether the denial of coverage had been made in bad faith.

1    Coventry establishes that Plaintiffs are entitled to allege the $420 paid out to the jewelry expert as "harm" in any claim based on bad faith[6] – even though it was expended in preparation for litigation (as opposed to being incurred during the insurance investigation), that litigation was necessitated by Defendant's refusal to honor their claim; i.e., a direct result of the alleged bad faith.[7]

1. IFCA

Defendant makes the argument that WAC violations alone are insufficient to establish an IFCA violation; there must be a corresponding "unreasonable denial of coverage." The Court understands that to be the state of the law. *See, e.g.,* Seaway Props., LLC v. Fireman's Fund Ins. Co., 16 F.Supp.3d 1240, 1255 (W.D. Wash. 2014). But, viewing the evidence in the light most favorable to non-movant Plaintiffs, the Court cannot say that Defendant's investigation and subsequent denial were "reasonable" as a matter of law. There was evidence that the ring had been out of Mrs. Wall's possession within the previous 12 months and arguably for a sufficient amount of time for a theft to occur. Amazingly, at no time during the course of its claims investigation did Defendant ever think to have the ring independently examined to determine the stone's authenticity, leaving untested the non-expert opinion of a jewelry store sales associate.[8]

---

[6] While there was no IFCA claim in Coventry, there was a CPA cause of action.

[7] Def cites to the unpublished Washington Court of Appeals opinion on the Coventry remand, which held that because "[a]ttorney fees and litigation expenses 'are not recoverable absent specific statutory authority, contractual provision, or recognized grounds in equity,'" Coventry would not be permitted to claim its expert witnesses fees as "harm." Coventry Assocs. v. Am. States Ins. Co., 2001 Wash.App. LEXIS 1454, *8 (Ct.App. Div. 1, 2001) ("Coventry II"). It is an unpublished opinion – it has no precedential value in Washington state court, and the Court sees no reason why it should be accorded any greater weight here. Def has certainly provided no precedential (i.e., published) authority which has followed Coventry II in the ensuing 17 years, and the Court has no intention of elevating an unpublished state Court of Appeals decision over a holding by that state's Supreme Court.

[8] Nor did Plaintiffs test the diamond before making a claim or filing suit; arguably an unreasonable way to proceed in either process.

1 It is a question for a jury whether it was still "reasonable" for Defendant to deny coverage under those circumstances.

Defendant's only other IFCA argument is that there were no damages. IFCA was not at issue in the Coventry case, so it remains an open question whether "actual damages" sustained as a result of an "unreasonable denial" under IFCA equals "bad faith harm" as defined in Coventry. It is not a straightforward issue.

IFCA differentiates between "actual damages" and "the costs of the action, including reasonable attorneys' fees and litigation costs." (*See* RCW 48.30.015(1).)[9] Defendant argues on this basis that Plaintiffs' expert witness expenses (which, here, are unquestionably "litigation costs") cannot be characterized as "damages." But the Court believes that the Coventry logic – if the expense is the direct result of the bad faith conduct – prevails and finds on that basis that the expert witness fee does equal "harm" under Washington state law.

To the argument that IFCA doesn't use the phrase "bad faith" in its language (and hence Coventry is inapplicable): if the CPA's "unfair or deceptive practices" falls under the "bad faith" rubric, then logic dictates the same treatment be accorded to IFCA's "unreasonable denial." The Court does not believe it possible to have an "unreasonable denial" by an insurer that does not amount to bad faith conduct.

If Plaintiffs were to succeed in establishing an unreasonable denial per IFCA on the part of Defendant, their expert witness fees would constitute "harm."

---

[9] To complicate things even further, the Washington Supreme Court has stated that "expert witness fees are not a proper element of damages, nor are they awardable as costs." Wagner v. Foote, 128 Wn.2d 408, 416 (1996).

2. Breach of contract

Defendant appears to base its entire breach of contract argument on the fact that the loss of the diamond did not actually occur. The fallacy of that position has been addressed above.

Again, the Court cannot say as a matter of law that Defendant adequately investigated Plaintiffs' claim in conformity with its contract with Plaintiffs.

> When an insurer fails to adequately investigate an insured's claim, the insured must either perform its own investigation to determine if coverage should have been provided or take no action at all. In either situation, the insured does not receive the full benefit due under its insurance contract.

Coventry, 136 Wn.2d at 282. Failure to adequately investigate, if proven, would constitute a breach of contract. Summary judgment will be denied as to this claim.

3. CPA

Defendant cites to case language requiring that a denial be "both frivolous and unfounded" in order to constitute "bad faith" for CPA purposes. Ins. Co. of Penn. v. Highlands Ins. Co., 59 Wn.App. 782, 786-87 (1990). It is a particularly unhelpful analysis tool, as neither Defendant nor the cases provide further definition of what constitutes a "frivolous" denial (nor, interestingly, does Defendant utilize a similar argument in the section of their briefing concerning Plaintiffs' actual "bad faith" cause of action). But in the final analysis, the Court cannot rule Defendant's investigation "non-frivolous" as a matter of law any more than it can be declared "reasonable" as a matter of law. And, again, the disputed issues about what Thielbar knew and when he knew it undercut the strength of Defendant's position.

Defendant reiterates its "how can this be frivolous and unfounded when we now know there was no stolen diamond" theme. It is still a losing argument, as is Defendant's contention "how can there be a loss to 'business or property' when the diamond was never stolen?"

Summary judgment will be denied to Defendant as regards Plaintiffs' CPA claim.

4. Bad faith

Defendant's argument for dismissal of this claim is very perfunctory; basically "we acted honestly on the information we had, therefore it was reasonable as a matter of law." The same analysis of the disputed facts above operates to defeat this argument – Defendant's conclusion was honest and reasonable, or dishonest and unreasonable, depending on which version of the facts a jury finds most credible.

The insurer argues again that Plaintiffs have failed to demonstrate that they were harmed. The Coventry case is directly on point and the Court will not reiterate that analysis here. Plaintiffs have sufficient proof of "bad faith harm" to survive summary judgment on their bad faith cause of action.

5. Equitable estoppel

The Court is baffled as to the existence of this claim, especially in light of the non-theft. The elements of the cause of action are:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted;

(2) action by the other party on the faith of such admission, statement, or act; and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

Dombrowsky v. Farmers Ins. Co., 76 Wn. App. 245, 256 (1996). All that Plaintiffs' complaint says is the "Country Financial [which the Court assumes is a previous business name of Country Mutual] must be estopped from relying upon any Policy provisions to limit the scope of its liability to the Walls and/or any exclusions to coverage therein."

This claim might have made some sense when the parties still thought the diamond had been stolen, and Plaintiffs wanted some equitable tool to preclude Defendant's from continuing

to rely on the "12 months from occurrence" policy exclusion. Now, however, Plaintiffs claim that the cause of action must go forward as a means of estopping Defendant from asserting that, because there was no theft, there was no bad faith conduct on their part.

In the first place, that assertion on Defendant's part was not made until <u>after</u> the complaint was filed; it was not an operative fact at the time of filing and therefore cannot provide a justification for the validity of the equitable estoppel cause of action. In the second place, the Court has already ruled that Defendant's "no loss, therefore no unreasonable denial" argument is a legal nullity. To the extent Plaintiffs are trying to use their equitable estoppel claim to defeat that argument, the battle has already been won.

The Court finds that, under <u>any</u> set of facts asserted, Plaintiffs have failed to state a claim upon which relief can be granted as to this cause of action, and Defendant is entitled to summary judgment dismissal of this claim as a matter of law.

**Conclusion**

It is regrettable that a case which is basically at this point a *de minimis* action has ended up in federal court, consuming the valuable (and not inexpensive) time of both court and counsel. However, the parties are technically entitled to be here and this Court is bound by the rule of law to adjudicate the facts before it.

Disputed issues of material fact preclude summary judgment to either side, with the exception of Plaintiffs' equitable estoppel claim, which cannot survive under any conceivable set of facts. That claim will be dismissed; the remainder of the action will proceed.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 17, 2018.

*[signature]*

The Honorable Marsha J. Pechman
United States Senior District Court Judge